# GRABOWSKY v. GALLAHER.

PATENTS; INTERFERENCE; NEGLIGENCE; PRIORITY.

1. The unanimous rulings of the experts of the Patent office in an interference proceeding, that a subframe designed for the removal of the engine from a motor vehicle is a subframe within the meaning of the issue, and that, although the specific purpose of the parties is some-

what different, their general idea of removing the motor is the same, will not be disturbed, unless error is clearly apparent.

2. Poverty of a party to an interference will not excuse a delay of ten years in reducing his invention to practice, although this would have involved considerable expense, especially where it does not appear that he was unable to pay the cost of preparing and prosecuting an application, which he failed to do. (Following *Wyman* v. *Donnelly*, 21 App. D. C. 81.)

3. The party to an interference who was the first to conceive but the last to reduce the invention to practice is not entitled to an award of priority, unless he was exercising diligence at the time the other party entered the field, and the fact that the latter was also negligent is immaterial. (Citing *Paul* v. *Johnson*, 23 App. D. C. 187.)

Patent Appeals. No. 803. Submitted November 18, 1912. Decided February 3, 1913.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. R. A. Parker, Mr. L. S. Bacon, Mr. E. J. Stoddard,* and *Mr. J. H. Milans* for the appellant.

*Mr. C. J. Kintner,* with *Mr. Ernest Wilkinson* and *Mr. Thomas A. Witherspoon,* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the Commissioner of Patents in an interference proceeding awarding priority of invention to Edward B. Gallaher, appellee. The counts of the issue, upon which this appeal is taken, are as follows:

"1. In combination, the frame of a motor car, a transmission mechanism mounted thereon, a subframe, a motor mounted thereon, track members on the frame, runners on the subframe adapted to engage said track members, means whereby the motor and the transmission automatically engage.

"2. In a motor vehicle, the combination of a main frame, a cross member toward the front of said main frame, longitudinal track members supported by said main frame, a movable subframe adapted to carry the motor mechanism, and arranged to travel on said track members, said cross member being bent in a vertical plane between its ends to permit the passage of said subframe and motor mechanism."

"4. In a motor car, an engine adapted to be removed and replaced at the front by a substantially horizontal movement, said engine being provided with a shaft extending horizontally and longitudinally of said vehicle, said shaft being provided with one half of a coupling, a transmission shaft provided with one half of a coupling adapted to be engaged by the half of the coupling on the engine shaft, and means for supporting the transmission shaft in position to be engaged by the engine shaft."

The invention consists of a motor vehicle so constructed that the power plant, or parts of it, is mounted on a subframe which will slide forward horizontally out of engagement with the other parts of the vehicle. The object of the invention is to remove the motor from the machine proper for repairs and, if necessary, for the substitution of another motor. The subframe in appellant's machine differs in construction from that of appellee's device. The distinction in structure is stated in the opinion of the Commissioner, as follows: "Grabowsky states that Gallaher's object is to remove the entire power plant as a unit from the chassis of his vehicle, while his own object is the removal of the engine, but not the accessories thereof. It is true that, according to the applications of the respective parties, they start from somewhat different points of view. Gallaher contemplates the removal of his entire power plant so that the device thus removed is capable of running by itself, either for the purpose of being tested or for operating other machinery. He states, however, that some of the accessories or elements of the complete plant may be secured directly to the main frame, such as the magnetic generator and the oiling device, and that a battery or induction coil secured to the main frame might be

substituted for the generator. Grabowsky's application, on the other hand, states that the radiator if desired may be mounted on the front of the subframe. Both applicants, however, have the same object in view; namely, the removal of the power plant for ready repair, and the substitution, if desired, of a similar apparatus. They differ principally in respect to the number of connected parts or accessories which they contemplate removing with the engine."

Appellant contends that no interference in fact exists, since appellee does not disclose such a subframe as is called for by counts 1 and 2, and that, as the purpose of his invention is to remove only the engine from the chassis of his vehicle, while appellee contemplates the removal of the entire power plant, the inventions are so radically different as to cause the language of count 4 to be given different constructions when applied to the respective devices. All of the tribunals of the Patent Office held that, while the structure of appellee differs from that of appellant, it nevertheless forms a subframe within the meaning of the issue, and that, although the specific purpose of the inventors is somewhat different, their general idea of removing the motor is the same, and hence embraced within the broad language of count 4, their being nothing in the prior art warranting its limitation to the particular construction shown by appellant.

This court has frequently held that the unanimous rulings of the experts of the Patent Office will not be disturbed upon a question of this nature, unless error is clearly apparent. No such error appears in the present case, especially in view of the fact that there is nothing in the record to show that the claims should be limited to the construction shown by appellant.

We may concede for the purposes of this appeal that appellant conceived the invention, as he contends, in 1897. He, however, failed to exercise diligence in reducing his invention to practice until August, 1907, when he began the building of a vehicle embodying the same. Appellant seeks to excuse this delay by the plea that he was a poor man and did not have the means to actually reduce the invention to practice, which, un-

doubtedly, would have involved considerable expense. Granting this to be true, the record fails to show that he was unable to pay the cost of preparing and prosecuting an application, which it was his duty to do. *Wyman* v. *Donnelly,* 21 App. D. C. 81. At least as early as the summer of 1906, as to which date there seems to be no question, appellee entered the field. He also was negligent, taking no steps toward reducing his invention to practice until September, 1907, one month subsequent to appellant's re-entry into the field, when the preparation of his application for patent was begun. Both parties rely upon their respective filing dates for a reduction to practice, appellee's being November 20, 1907, and appellant's December 18, 1907.

Appellant contends that conception must be connected with reduction to practice by the exercise of reasonable diligence, and, hence, each party can only go back to the date of his re-entry into the field for his date of invention, and that appellee, having re-entered the field at a time when appellant was using due diligence, though the first to reduce to practice, is not entitled to an award of priority. It is a settled rule of law, however, that where one is the first to conceive but the last to reduce to practice, he must show the exercise of diligence at the time the subsequent inventor entered the field. This rule is not affected by the fact that the later inventor was negligent, since he was the first to reduce to practice. No further discussion is necessary, since the case of *Paul* v. *Johnson,* 23 App. D. C. 187, is decisive of this question. From a reference to the record in that case, it appears that Paul conceived the invention in 1891, but was inactive until February 28, 1896. Johnson conceived in July, 1895, but was chargeable with negligence until March 24, 1896, a date subsequent to Paul's re-entry into the field. Johnson, however, was the first to reduce to practice. Upon this state of facts, which is precisely the same as in the case at bar, Chief Justice Alvey, referring to a contention similar to the one here advanced, said: "But this contention, if sustained, would contravene a well-settled principle of patent law. * * * The principle is well and clearly stated by Judge Taft,

in delivering the opinion of the circuit court of appeals of the sixth circuit, in the case of *Christie* v. *Seybold,* 5 C. C. A. 33, 6 U. S. App. 520, 55 Fed. 69. In that case the judge said: 'The diligence of the first reducer to practice is necessarily immaterial. It is not a race of diligence between the two inventors in the sense that the right to the patent is to be determined by comparing the diligence of the two, because the first reducer to practice, no matter what his diligence or want of it, is prior in right, unless the first conceiver was using reasonable diligence at the time of the second conception and the first reduction to practice.' "

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                        *Affirmed.*